The next case today is Thomas Woods v. Sean Medeiros, Appeal No. 201664. Attorney Jacobson, please put yourself on the record for us. Good morning. Miles Jacobson for Thomas Woods. Judge Lynch, may I have two minutes for rebuttal time? Yes, you may. Thank you. This case is here, in a sense, as a case of first impression. Mr. Woods was brought before a grand jury investigating a murder of which he was later convicted. And at the time he was brought before that grand jury, he was a target of that investigation. He was brought by a summons which the Supreme Judicial Court has acknowledged compelled him to appear to testify. He was sworn and unrepresented. Counsel, I don't mean to be rude, but you have very little time and give us credit for knowing what the facts of the case are. Yes, Judge. The facts of the case, I was only repeating because they're essential to understanding why the Supreme Court did not address this issue. But I'll get directly I'll direct myself to that in those terms. The first major matter that I need to address is whether or not this SJC or the state proceedings. Adjudicated the issue that's now before this court on the merits, and it did not do so. So there are two, as the court knows, Supreme Court decisions. The first one, they determined that target was, in fact, an important question. And as a result of the fact that target status was an important question, they issued a. A administrative ruling for the future, only non-constitutional, saying because he was a target, he should targets like this need to be ameliorated. The compulsion needs to be ameliorated by at least a warning of possible self-incrimination. That did not happen. However, they do not address the constitutional issue. And the reason they do not do so, I submit, is because they determined that there was no reason. And they say it's something in these terms. There was no reason to disturb the trial court's finding of the trial court's conclusion that he was not a target. So for the purposes of SJC, the first SJC case was one. He was not a target. And there was no basis, therefore, to reach the federal constitutional issue. In fact, SJC law, as I indicated in my brief, rules prevents them from doing so. They should determine the case. They should only reach that federal issue if they need to. Nor do they not need to, but they could not because all the facts were not in place. In fact, this was also true in Washington v. United States. This was true in the Mondeharu case. And this was true in several cases in this court where there was an interest and a possibility of ruling on this issue, but all the parts were not in place. Here, all the parts are in place. He was a target. He was compelled. He was not advised. He had a right against compulsory self-incrimination. Now, that was SJC 1. And I submit that under Richter, it was clearly not expressly decided in the SJC 1, in Woods 1, but also inferentially it's not decided. Four minutes remaining. The very next clause in what the SJC said in Woods 1 was even if the defendant were a target, the Commonwealth was under no obligation to warn him of that status under federal law. Exactly. That's true. I have no grief with that, no issue with that. There's a difference, Your Honor, between warning somebody of his status as a target, which is clear from Washington that that was not a right that he had, and warning him that he had a right not to answer. But even though he was compelled by summons that says you are hereby ordered in the name of the Commonwealth to appear to testify, and even though he was sworn, he still maintained the right to assert a Fifth Amendment privilege not to testify if he so wanted to, and that was not addressed by the SJC in Woods 1. All they addressed is what you just pointed to, Judge Carrera. So they didn't address that. In fact, now that you've mentioned that, that's what they say in Woods 2 also. Once he's now a target, they simply refer back to what the SJC said in Woods 1, which is he's not entitled to be told he was a target. That's true. Well, what do you then do with the finding that he wasn't a target? How does that then affect your constitutional argument? It would defeat it entirely, Your Honor, except for the fact that he was then determined to be a target in a motion for new trial based on additional evidence, which the first judge did not have before. And so the most recent factual finding for purposes of habeas appeal is the finding of the motion for new trial judge, which came in between Woods 1 and Woods 2, which determined as a matter of fact that he was a target, and that's what Judge Young found when he wrote his memorandum in which he denied the petition. And once the facts were changed, was the argument then exhausted? In Woods, as I understand it, they first said, well, you're not a target, so we don't need to deal with the constitutional issue. Yes. And then subsequent to that, the lower court corrected itself and said it was a target. Yes. Doesn't he then need to bring the issue, the constitutional issue, back to the SJC? Indeed. And he did. There was a second SJC proceeding. Actually, it needed to be there needed to be an intervening proceeding because you need to go before a gatekeeper. Right. But we went before the gatekeeper. He allowed us to bring to go before the SJC again. Now, technically, it was simply an appeal from the denial of a motion for new trial. But we did go before the SJC again. It's in Woods. Let's refer to as Woods 2, which is cited at 480 Mass 231 and part of the record. So, yes, he went before it in Woods 2. And in the Woods 2 case, what they say, first of all, is they misstate the claim that's made. If you looked at my appeal, what I claimed in Woods 2, it's not what the SJC says in Woods 2. It says on direct appeal, this is now from SJC 2 on page 237, the defendant raised the very same legal argument he puts before us now because he was a target of the grand jury. He was entitled to self-incrimination warnings. First of all, that's not true. That's not what the argument was, although it's close. Then the court, the next sentence says the court specified in Woods 1 that even if the defendant were a target, the commonwealth was under no obligation to warn him of that status. The very point you just addressed, Judge Carriata. But again, that's not the claim. It's not a difficult issue to see the difference between these two things. And it's not the first time that difference has been highlighted. It was highlighted in Washington versus the United States. What puzzled me about all that, though, is they adopt an administrative rule. Yes. But they explain that they're not applying it retrospectively because it's not constitutionally required. Well, what they said is this. They don't say they don't actually explicitly address whether or not he as a target, he would be required that in order to admit grand jury testimony of a target, the government would have had to have warned him of his not of his status, but of his right to claim self and his right to refuse to answer on the basis of self-incrimination. They don't address that. Time expired. And then I'm just let me follow up with one more question. At the end of Woods 2, they then say, had the trial judge done so, and I'm assuming and maybe I'm wrong on that assumption that they were referring back to considering him a target. He would have discovered that such warnings were not legally required at the time. I see that. And that's, in fact, strange since since this court and two United States Supreme Courts have said in what I'm referring to, Washington and Mundurahara, have said that's an open question whether or not that that could be the case or not. To just sort of casually say it wasn't required doesn't address the issue. What they're saying is this. There was no administrative rule at that time. That is, Woods 2 is referring back to the fact that in Woods 1, they issued a rule for the future and that that was not available, therefore, for Woods himself. That's all true as an administrative matter. They also do not address the constitutional question. It doesn't. I mean, it either does exist or it doesn't exist. It's not whether it exists at the time. Fifth Amendment exists. You're not allowed to make somebody be a witness against himself in a criminal case and that he was a target does just that because here the government intentionally is calling a person to make incriminating statements. They know he had been talked to before. They know he's going to go before the grand jury and either deny what he said before incriminating if he was a target or to come up with additional permanent statements, which is what happened. So, as I understand, your entire argument hinges on us reading when they say warnings were not legally required at that time. We need to read that as not being a finding. The Constitution didn't require them at that time. Or else your argument falls apart. Yes, Judge. That's all the facts. You have a minute rebuttal. Your Honor, I had asked for two minutes, but maybe. Sorry, you'll get two minutes. Okay, thank you so much. Thank you, sir. If you could mute your camera and your audio at this time. And Attorney Eschke, if you could please introduce yourself back on the record. Good morning, Your Honors. Assistant Attorney General Abersham Eschke for the respondent Sean Medeiros. The way the petitioner frames this issue has shifted over time. The issue here is whether the targets of grand jury investigations have a constitutional right to self-incrimination warnings. Really, I thought the issue was whether a DEPA applies or not. And therefore, what lens we look at the state court ruling through. And that depends on whether the SJC addressed his argument or not. Is that correct? If that is correct, get to that argument. Right. So the SJC adjudicated this issue on the merits when it held that targets of grand jury investigations do not have a constitutional right to self-incrimination warnings. The petitioner's dissatisfaction with the SJC's holding does not allow him to keep challenging the court's ruling by suggesting that this issue remains undecided on the merits. Could you point us to where? Counsel, we just walked through some specifics in the two SJC opinions. What language do you direct us to in the SJC opinion to support the contention that the SJC decided the constitutional issue? So in Woods 1, the court said, We consider for the first time the defendant's separate argument that the Commonwealth must advise targets or potential targets of the grand jury's investigation of their rights not to incriminate themselves. In Woods 1, the SJC analyzed Supreme Court precedent and First Circuit precedent and noting that the Constitution did not require the warnings that Woods requested. Didn't you just say targets or non-targets? Targets or potential targets of the right to not incriminate themselves. And then didn't they proceed to decide he wasn't a target? In Woods 1, yes. The SJC, based on the evidence it had before it, ruled that he was not a target. So in Woods 2, the court and the SJC held that just the... Are you saying Woods 1, having determined that he was not a target, nevertheless decided that had he been a target, it would have violated the Constitution? No, that the Woods 1 court recognized that the Constitution did not require the warnings that Woods had requested. I think that was a yes, not a no. I'm a little unclear. Let me try it again. As I understand Woods 1, they held he was not a target. Exactly. Are you saying that they nevertheless, in Woods 1, also decided that had he been a target, there still would have been no constitutional violation? Exactly, yes. Where did they say that? So I think you need to read Woods 1 with Woods 2. I think you need to read both SJC decisions together. And then in Woods 2, the court said that just as the Commonwealth was under no obligation to warn the defendant of his target status, even if he were a target, so too was the Commonwealth under no obligation at that time to advise the defendant of his right against self-incrimination. And that irrespective of the defendant's target status, he was not entitled to the new non-constitutional rule. I may have missed something here, but when you described Woods 1, I think what you read to us was targets or potential targets. Targets and potential targets have no constitutional right? Yes. Okay, so even if he later is determined to be a target, in Woods 1, they said even potential targets don't have a constitutional right, so they reached it on the merits. And then your argument is, if you will, the coup de grace comes in Woods 2, if it was needed, where the court more explicitly says, even assuming he was a target, he still has no constitutional right to the warnings he's requested. Your brother's argument is that they got confused about which warnings he was talking about, that there is a difference between a warning that you are a target and a warning that as a target you have a right not to incriminate yourself. So that's, I think, what his argument boils down to, and what is your response to that? So the court in Woods 2 expressly explained and reiterated what it meant in Woods 1, and it teased out these two arguments. Five minutes remaining. So in Woods 2, one argument that the court recognized was warning someone of their target status. And the second argument, which is the issue that was before the SJC, the defendant's separate argument was regarding self-incrimination warnings. And the court acknowledged that it was considering that issue for the first time. And so the court in Woods 2 teased out those two issues. There's warning someone of their target status, and then there's warning a target, or a potential target, of their right against self-incrimination. Counsel, in answer to Judge Chioda's question as to where the SJC made an explicit holding, you read a sentence from Woods 2 explaining what the court held in Woods 1. My question is, is there any language in Woods 1 that says what that quoted statement says? And if not, what do we do with the statement from Woods 2? We've got the SJC explaining what its prior decision held, but what if we can't find that holding explicitly in its prior decision? So is your question, where in Woods 1 does it say, even if you were a target? Yes, that's precisely it. And so I think in Woods 1, you need to read the court's analysis of all the Supreme Court laws, including Washington and Manduano, and the First Circuit laws that they review. You need to read that and recognize that the court observed that the Constitution did not require the warnings Woods requested. Perhaps more precisely to your point, Judge Selya, because the court in Woods 1 did not consider the petitioner a target at the time he testified before the grand jury, they did not go into this issue of whether or not his target status allowed him to benefit from the new non-constitutional rule. Let me ask some follow-on questions. So we have the SJC telling us in Woods 2 what, in its view, it decided in Woods 1. Even if a federal court thought that Woods 1 didn't quite say what they say in Woods 2, they said in Woods 1. Don't we have to defer to that? Exactly, Your Honor. And why? Why do we have to defer to that? My understanding is that the SJC and state courts are allowed to clarify their prior holdings and prior rulings, and that it is important in this matter that Woods 1 and Woods 2 be read together as establishing that the SJC adjudicated this claim on the merits and holding that there is no constitutional right to self-incrimination warning. Well, it would be a little odd for a federal court to say, no, the SJC never reached the question on the merits because we read Woods 1 differently than the SJC did in Woods 2. That just strikes me as kind of odd in the ADEPA framework. So I was questioning whether the question of the proper reading of Woods 1 actually is part of the ADEPA analysis. I do not believe that it is part of the ADEPA analysis, Your Honor. I would also note that Judge Young held that the SJC did rule explicitly on whether a constitutional violation had occurred, although it did not discuss the petitioner's requested remedy. But we reviewed Judge Young's conclusion of that effect de novo, so that doesn't get you very far. It's not personal to Judge Young. We review any judge's decision on that point de novo. All right. What is your further argument? I would simply say that it is important in this case, because the SJC adjudicated on this issue on the merits, that this court's review of the SJC's decision is under ADEPA, and there is no Supreme Court precedent that requires that targets be warned of their self-incrimination rights prior to testifying. So you're saying under either of the ADEPA standards, whether we give deference or we review it de novo, the answer is the same? Yes. There is no constitutional right. So that's your fallback argument. Okay. Thank you. Thank you. Thank you, Attorney Eschke. At this time, you can mute your device, and Attorney Jacobson, if you could unmute your device and reintroduce yourself on the record, you have two minutes of rebuttal. Thank you. Myles Jacobson for Mr. Woods. I trust the courts will read both Woods 1 and Woods 2 carefully coming to this decision, but I want to point out something in Woods 2 that we haven't yet talked about. It occurs at page 239 near the end of Woods 2 decision. And what they're saying there with C is that they point to the fact that the trial judge was not certain whether or not the target status would make a difference one way or the other. And then the court says, it had not researched the law regarding defendant's position that target warnings were required. That target warnings were required. I'm pointing this out again. They're referring to target warnings. Excuse me for raising my voice here. But then he says, as our above discussion makes clear, had the trial judge done so, determined whether there were target warnings, he would have discovered that such warnings were not legally required at that time. And thus the Commonwealth's failure to provide the defendant with a warning did not preclude it from using that testimony at trial. Nowhere in the various appellate proceedings that I have brought, which have all been all of them all post-conviction, have I suggested that target warnings were required. Not only that, there's a different point here that's important to make. It's one thing for a court to tell a grand jury how it needs to proceed. Grand juries are a respected quasi-separate arm of the government controlled by the district attorney or prosecuted to a large degree, subject to supervision of the court. But to tell the grand jury to make up a rule like the SJC did, it's a prospective rule. And as Miranda did in the United States, as a rule that covers how certain types of warnings must be given in certain situations. That's not a constitutional idea. The constitutional idea is this. What would you like us to do about it, counsel? What I'd like you to do. We have no warrant in this case to pass upon the way in which the state court is applying its state rule. Your case is going to stand or fall on whether there is a federal constitutional right. Indeed. Of the scope and extent that you claim. And I still haven't heard an answer from you as to how to explain the sentence from Woods 2 that your sister counsel read to us five minutes ago, where the Woods 2 court explained what it had held in Woods 1. They said that the constitutional warnings are not constitutionally required. You're asking me a couple of questions which I would like to respond to. I'd like you to focus on that statement that the Woods 2 court made, explaining what it thought it had held in Woods 1. I'm reading that section, Your Honor. I don't read it that way. I read it that they were saying that they did not find that there was an obligation to require self-incrimination warnings. I understand that. But that's based on Woods 1. But as we have already discussed in Woods 1, they were on one hand said, well, you're not entitled to target warnings. No issue there. But also, he's not a target. And his relevance as a target could hardly be more important. In the case Chavez versus Martinez, for example, it's well established that the government may compel witnesses to testify at trial or before a grand jury, so long as the witness is not a target. Let me try it this way. Your basic argument on the merits is that the time he called for the grand jury, the Constitution to the United States obligated the state to warn him, give him advisement of his right against self-incrimination. No, almost, but not quite, Your Honor. What I'm saying is this. I'm not asking this court to tell a Massachusetts grand jury how it should operate under any circumstances. What I'm asking this court to do is to preserve a defendant's right not to have compelled statements used against him or her at trial. That's when the constitutional violation takes place. That's where this court, unless the SJC decided that's perfectly fine under the Fifth Amendment to go ahead and use compelled statements. And the fact that he's a target and not warned has been indicated to be meaning that they don't have to warn him if they don't want to. But then they can't use that at trial if there's a subsequent objection. That's the exclusionary rule, right? No, Your Honor. The exclusionary rule would come in under the circumstances. Take a Fourth Amendment issue where the harm comes in in the unreasonable search and seizure. Here the harm comes in when it's being introduced at trial. This is just a slow-moving, making a person testify, compelling them to testify, not warning them of anything. They're a target. The government is thinking of them as a potential or putative or virtual defendant. Those words have been used by this court to describe the target. And then slowly, next step, indicting him and putting him on trial and then reading 100 pages of his testimony to the record. That's a narrow thread you're trying to… You've got to say that he raised this argument, as you're articulating it now, and then the SJC managed to write two opinions and never address it. He raised the issue and the SJC found he wasn't the target. That explains the first… Well, but that doesn't explain Woods too in their statements about even if he was a target. And I can't… You don't want me to sit here and simply read all of Woods too to you. But when you read Woods too with that question in mind, are they really addressing the Fifth Amendment issue? Do you think that Woods too stands for the proposition in any sense that the Fifth Amendment does not give a person protection under these circumstances where they're a target and not warned? If you think that's what they're saying, not warned of their right against self-incrimination, then I lose the case. But I think that's not what it says. I think they're deciding it on state law grounds. And I think if you read it, I hope the court would agree with me and then reach the merits of this issue. Thank you, Mr. Jacobson. Thank you, judges. That concludes argument in this case. Attorney Jacobson and Attorney Eschke, you should disconnect from the hearing at this time.